**SO ORDERED.**

**SIGNED this 12th day of January, 2007.**

_____

**LARRY E. KELLY**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| **IRENE ELIZABETH HOLLAND,** | § | **CASE NO. 05-62762-LEK** |
| Debtor. | § | Chapter 7 |

_____

| | | |
|---|---|---|
| **ROSE DOUSO PETRO,** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 06-6001** |
| | § | |
| **IRENE E. HOLLAND, SCOTTIE WAYNE** | § | |
| **HOLLAND, AND SECURITY TITLE** | § | |
| **CORPORATION,** | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| **ROSE DOUSO PETRO,** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 06-6002** |
| | § | |
| **IRENE E. HOLLAND,** | § | |
| Defendant. | § | |

1

| | § | |
|---|---|---|
| **SCOTTIE WAYNE HOLLAND** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 06-6004** |
| | § | |
| **IRENE E. HOLLAND,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

On July 13, 2006, the Court conducted a trial in Adversary Proceeding Nos. 06-6001, 06-6002 and 06-6004.  All three of these cases had been set for trial by prior court order to occur at the same time. At the beginning of trial,  Plaintiff Rose Douso Petro announced she had settled all claims brought against Defendant Scottie Holland in Adversary Proceedings Nos. 06-6001 and 06-6002.  The parties to Adversary Proceeding No. 06-6004 also announced a settlement into the record.  In addition to ruling on the remaining issues, this decision will set forth the announced terms of these settlements.

## BACKGROUND INFORMATION

Traditionally, trials of family conflicts often involve emotion and controversy, yet are short on reason, logic, and admissible evidence.  These adversary proceedings share these traits.  Rose Douse Petro ("Plaintiff Petro" or "Petro") is the mother of Defendant Debtor Irene E. Holland ("Defendant Irene Holland").  Defendant Scottie Wayne Holland ("Defendant Scottie Holland") is Defendant Irene Holland's ex-husband, and, therefore, Plaintiff Petro's ex son-in-law.  The cause of this litigation is the failure of the Defendants Holland to repay a loan to Plaintiff Petro evidenced by a Promissory Note dated November 1, 1988, in the original principal sum of $305,000.  The payees of the loan were Rose Dousa Petro and her now deceased husband, Samuel Petro.  The original maturity of the Note called for repayment on November 1, 1993 "or after the sale of the property in San Antonio (12995 I.H. 35 North, 4.23 Acres)."  About seven years after that loan was made, Defendants Holland sold this San Antonio property but did not repay Plaintiff Petro.  Plaintiff Petro asserts that she was not told of the sale and did not discover it had occurred until the spring of 2002.

2

In the spring of 2003, Defendants Holland later sold a residence they owned in Hawaii for $1,600,000.  About this same time, the Hollands divorced.  As part of the divorce, they entered into a written Agreement Incident to the Divorce in which both parties agreed to dedicate $286,568.53 of the Hawaii sales proceeds to repay Plaintiff Petro the loan at issue.  It is unknown how the amount of $286,568.53 was derived or why the parties did not include in their divorce agreement the amount of $305,000 to repay Plaintiff.  The Hawaii property sale occurred but Plaintiff did not receive $286,568.53.  Security Title Corporation issued a check to Plaintiff Petro in care of Defendant Irene Holland in the amount of $286,568.53, but Defendant Irene Holland returned the check to the title company, along with instructions for the title company to void the check and issue four other checks using this money.  Plaintiff Petro received one of the checks written for $110,000, an amount that was owed to her by one or both Defendants Holland on other debts unrelated to the Note.  Despite their divorce agreement, Defendant Irene Holland did not repay Plaintiff Petro the amount she had agreed with her ex-husband to pay Plaintiff.  Plaintiff was not a party to the divorce agreement and did not learn of the agreement's terms until approximately a year after the Hollands were divorced and the Hawaii property was sold.

In June 2004, Plaintiff Petro sued Defendants Holland and Security Title Corporation, the title company that handled the sale of the Hawaii property, in the 169th Judicial District Court of Bell County, Texas, Cause # 204,824C.  On January 6, 2006, Defendant Irene Holland removed this suit to this Court, and it was assigned Adversary No. 06-6001.  The details of the complained of actions are stated in Petro's Fifth Amended Original Petition which is attached to, and incorporated into, the notice of removal.  Prior to removal, the state court granted a special appearance motion of Security Title Corporation, determining it did not have in personam jurisdiction of Security Title Corporation, and dismissed all claims and cross-actions against Security Title for want of jurisdiction.  Defendant Irene Holland filed her answer in this adversary proceeding on February 13, 2006, in which she denies all substantive allegations.  Defendant Irene Holland asserts no counterclaims other than a request for her attorney's fees under 11 U.S.C. § 523(d) should she prevail.[1]

---

[1]  Section 523(d) provides: "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the

Adversary No. 06-6002 was filed January 11, 2006 by Petro as Plaintiff against Defendant Irene Holland as an objection to the dischargeability of the debt owed to Plaintiff on the unpaid Note, brought pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).  Plaintiff Petro later amended her complaint to add an objection to Defendant Irene Holland's discharge on account of said defendant's alleged violations of 11 U.S.C. §§ 727(a)(2)-(5).  Defendant Irene Holland filed her answer in this adversary proceeding on February 13, 2006, in which she denies all substantive allegations.  Defendant Irene Holland asserts no counterclaims other than a request for her attorney's fees under 11 U.S.C. § 523(d) should she prevail.

Adversary No. 06-6004 was filed January 17, 2006 by Scottie Wayne Holland against Irene Holland, alleging that her obligations to him, arising out of the Note and the Agreement Incident to Divorce, were nondischargeable obligations pursuant to 11 U.S.C. §§ 523(a)(2), (4), (6), and (15).  Defendant Irene Holland filed her answer in this adversary proceeding on February 13, 2006, in which she denies all substantive allegations.  Defendant Irene Holland asserts no counterclaims other than a request for her attorney's fees under 11 U.S.C. § 523(d) should she prevail.

At the beginning of trial, by means of a motion seeking a default judgment, dismissal, or sanctions, Defendant Irene Holland asked that Plaintiff Petro's Pre-trial Order be stricken from consideration by the Court because the Pre-trial Order had not been submitted to her or the Court by the required deadline nor had Plaintiff timely served her exhibits on Defendant.  Alternatively, Defendant asked that all consideration of any claims brought under § 727 be denied because Plaintiff had failed to include any factual allegations or legal issues regarding an objection to discharge in her late-filed Pre-trial Order.  As relief, the Court offered Defendant a continuance of the trial and the issuance of an order specifically delineating which issues would be tried on the merits.  Defendant declined the continuance.  The Court then denied Defendant's motion to strike consideration of the Pre-trial Order and denied her request that the § 727 issues not be considered.  The trial proceeded.  In post-trial pleadings, Defendant again asks that the Pre-trial

---

costs of, and a reasonable attorney's fee for, the proceedings if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

4

Order be stricken from consideration.  That relief is again denied.

 This is a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(b)(2)(I) and (J).

 During trial, Plaintiffs admitted into evidence Exhibits P1, P3-10, and PF.  Defendant Irene Holland admitted into evidence Exhibit D1.  Plaintiff Rose Petro and Defendant Irene Holland testified on direct and cross-examination and were the only two witnesses called.

 After considering all of the evidence received at the trial, as well as the pleadings on file,[2] the following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.  No party objected to any of the evidence being considered on any issue in any of the adversary proceedings, so unless otherwise specifically noted, each finding of fact and each conclusion of law applies to Adversary Proceeding Nos. 06-6001 and 06-6002.

## SETTLEMENT ISSUES

 At the beginning of the trial in Adversary Proceeding Nos. 06-6001 and 06-6002, the parties announced that Plaintiff Petro had entered into a settlement agreement with Defendant Scottie Holland, an agreement which had been signed by the attorneys for both parties.  The document was provided to the Court but its formal admission into the record was not requested.  The attorney for Plaintiff Petro read the terms of the settlement into the record, and the Court approved those terms.  In settlement, Scottie Holland assigned to Rose Petro all rights and title to his claims against Security Title Corporation, including any rights to control or settle or handle or prosecute those claims, and he dismissed his cross-action against Plaintiff Petro in Adversary

---

[2]  The Court has considered the following pleadings filed post-trial: 1) for Adversary Proceeding No. 06-6001: Defendant Irene Holland's Written Arguments and Authorities Re: Adversary Complaint to Except Debt from Discharge filed September 15, 2006 (Doc. #33),  Written Reply of Rose Petro Re: Adversary Complaint to Except Debt from Discharge filed October 6, 2006 (Doc. #34), and Defendant's Response to Written Reply of Rose Petro Re: Adversary Complaint Objecting to Dischargeability of Debt filed October 9, 2006 (Doc. #35); and 2) for Adversary Proceeding No. 06-6002: Written Arguments and Authorities of Rose Petro Re:  Adversary Complaint to Except Debt from Discharge filed August 31, 2006 (Doc. #19); Rose Petro's Proposed Findings of Fact and Conclusions of Law filed September 1, 2006 (Doc. #20), Supplement to Written Arguments and Authorities of Rose Petro Re: Adversary Complaint to Except Debt from Discharge filed September1, 2006 (Doc. #22), Defendant Irene Holland's Written Arguments and Authorities Re: Adversary Complaint to Except Debt from Discharge filed September 15, 2006 (Doc. #23), Written Reply of Rose Petro Re: Adversary Complaint Objecting to Dischargeability of Debt filed October 6, 2006 (Doc. #24), and Defendant's Response to Written Reply of Rose Petro Re: Adversary Complaint Objecting to Dischargeability of Debt filed October 9, 2006 (Doc. #25).

No. 06-6001.  In turn, she dismissed with prejudice all of her claims against him wherever made. Additionally, Scottie Holland agreed to assist Rose Petro by providing her any needed discovery, and should any claims against Security Title Corporation be successful, after the payment of attorney's fees and expenses, the parties agreed to divide the net proceeds 60% to Rose Petro and 40% to Scottie Holland.

The Court was advised that some time prior to the bankruptcy case, Scottie Holland had filed a lawsuit in the State of Hawaii against Irene Holland and Security Title Corporation, alleging various claims of liability having to do with the disposition of the $286,468.53 without his knowledge or consent.  However, prior to this trial held July 13, 2006, Scottie Holland had dismissed without prejudice all of the claims made in his Hawaii suit filed in the First Circuit, State of Hawaii, against Irene  Holland, Security Title Corporation and various John Doe entities. No one informed the Court at trial of this dismissal.  Thus, currently, this Court knows of no pending suit against Security Title Corporation by Scottie Holland or Rose Petro.  Counsel for Rose Petro stated on the record that he would draft the necessary documents to implement the settlement, and the Court advised him to consult with Bankruptcy Rule 7054 to determine whether to submit an interim or final judgment.  To date, nothing has been submitted.

For Adversary Proceeding No. 06-6004, the Court reviewed and approved the settlement announced between Plaintiff Scottie Holland and Defendant Irene Holland, the terms of which were announced into the record on July 13, 2006.  In general, the two parties agreed how they would pay certain tax liability which apparently was incurred at or about the time of their divorce, with the amount Irene Holland agreed to pay to be excepted from her discharge.  In return, Plaintiff Scottie Holland would dismiss all other issues asserted against her.  Specifically, Defendant Irene Holland agreed to pay to Scottie Holland, at the rate of 4% per annum and over a reasonable length of time, one-half of any tax liability for which Scottie Holland may be held to be the responsible party by the Internal Revenue Service for tax related to the year 2002 for Holland's Heavy Equipment, Inc., a corporation owned by both Hollands.  The anticipated tax owed is $9,916 plus penalties.  Scottie Holland also agreed to dismiss the cross-claim he filed

against Irene Holland in Adversary Proceeding No. 06-6001.[3]  An Agreed Judgment containing terms consistent with this announcement was signed by the Court on October 2, 2006.

## Findings of Fact

1.      Irene Holland and Scottie Holland borrowed money from her parents, Rose and Samuel Petro.  Some time later, this debt was memorialized in a promissory note dated November 1, 1988 that Samuel Petro drafted showing that the Hollands owed $305,000.00.  This note was signed by both Irene Holland and Scottie Holland and was payable to Samuel and Rose Petro (the "Note").  Samuel Petro is now deceased.

2.      The debt was to be repaid, according to the terms of the Note, on November 1, 1993, or following the sale of about four acres in San Antonio, Texas, then owned by Defendant Irene Holland and her husband, Scottie Holland.

3.      Plaintiff Petro did not know whether Irene Holland had made any payments on the Note while Mr. Petro was alive.  Mr. Petro handled all of the bookkeeping.

4.      The Note was not paid by November 1, 1993.

5.      The San Antonio property referenced in the Promissory Note was sold on or about March 29, 2000.

6.      Rose Petro testified she learned of the sale of the San Antonio property in the spring of 2002.

7.      In August of 2004, Rose Petro submitted an affidavit in support of a motion for partial summary judgment filed in her state court suit against the Hollands in which she stated she started making demands on the Hollands for repayment of the Note after July 30, 2001 and that she started making repayment demands after she learned of the sale of the San Antonio property.  In testimony, Petro stated that the 2001 date was wrong, that she learned of the sale in 2002.  The Court took judicial notice of the differing dates.

8.      On May 20, 2003, Irene Holland and Scottie Holland were divorced in the 27th Judicial District Court of Bell County, Texas.  As part of the divorce decree, the parties executed an Agreement Incident to Divorce and made it a part of the Agreed Decree of Divorce.  In the

---

[3] The dismissal of this cross-claim will be accomplished in this decision.

Agreed Decree of Divorce, the judge approved the Agreement Incident to Divorce and "made it a part of this decree as if it were recited verbatim."

9.      The Agreement Incident to Divorce, signed March 27, 2003, provides as follows: "Husband and Wife agree that the real property and all improvements located thereon commonly known as 5325 and 5325B Weke Road, Hanalei, Hawaii, shall be sold at a gross sales price of $1,600,000 and such sale will close on April 11, 2003 at Security Title Company in Lihue, Hawaii. The parties acknowledge and agree that such sale proceeds will be disbursed by the Escrow Agent in the following approximate amounts to . . . :

Rose Petro                                                    $286,468.53

.....    One half remaining net sales proceeds to Wife.

One half remaining net sales proceeds to Husband.

10.     The home in Hawaii was sold on or about April 11, 2003.

11.     After the house was sold, along with other checks issued to other creditors of the Hollands, Security Title Corporation issued a check from its escrow account payable to Rose Petro in the amount of $286,568.53.

12.     Petro had no knowledge that a check had been issued to her, in care of Irene Holland, in about June of 2003. She had never seen the check nor received it. She testified she never knew of the Hawaii property's sale nor that a check was coming to her from that sale.

13.     Plaintiff Petro learned of the Agreement Incident to Divorce, which included the $286,568.53 payment to her, sometime after June 2004 when she filed suit against Irene Holland in state court, which was about a year after the Hawaii sale occurred.

14.     In the spring of 2005, about a year after her lawsuit had been pending, Plaintiff Petro learned from her attorneys about the $286,568.53 check that had been issued to her nearly two years prior.

15.     This $286,568.53 amount referenced in the Agreement Incident to Divorce was to be credited against the sum due and owing on the original $305,000 Promissory Note.

16.     Plaintiff Petro had no knowledge how the $286,468.53 amount stated in the Agreement Incident to Divorce was derived, given that the Note was for $305,000. She testified she had never discussed with Irene Holland how this number was derived.

8

17.     Plaintiff Petro testified that she had no communication with Irene Holland regarding the $286,568.53 check.  She testified she had no knowledge that Irene Holland returned the $286,468.53 check to the escrow agent at Security Title Corporation and had no knowledge that Irene Holland issued instructions to the escrow agent to void the check payable to Rose Petro and to use the money to issue four other checks.  The four other checks using the $286,568.53 were: a check in the amount of $54,389.09 to Irene Holland, a check in the amount of $57,151.87 to RDO Financial, a check in the amount of $65,027.57 to Citicapital, and a check in the amount of $110,000 to Rose Petro (totaling $286,568.53).

18.     On questioning by Plaintiff's attorney, Irene Holland testified that she had Plaintiff's oral permission to void the $286,568.53 check.  Irene Holland testified she told Plaintiff Petro that the $286,568.53 amount would not be sent to Plaintiff because Irene Holland needed money to pay on debt she owed on three pieces of heavy equipment in order to save her investment in said equipment.  Holland testified that this equipment, as well as the debts owed on this equipment, although the debts were in Scottie Holland's name, were awarded to her in the divorce.  She testified because she could not operate the equipment, she could not make money using the equipment to make the required monthly payments owed on it.  Holland testified that she received her mother's approval to pay off the debts owed on the equipment using Hawaii sales proceeds.  She testified she would still be able to send Plaintiff Petro a "sizeable amount of money" out of the proceeds and would pay Plaintiff Petro the remainder owed over time. Defendant Irene Holland testified that this agreement with her mother that the $286,568.53 amount coming to Petro would be changed to a lesser amount and the remaining money used to pay other creditors was not in writing.  After Defendant Irene Holland testified, no effort was made to rebut her version of this "conversation" with her mother, Rose Petro, even though Ms. Petro was in the courtroom during the entire examination and was available for recall.

19.     Plaintiff Petro received the $110,000 check in July 2003 with instructions from Defendant Irene Holland that the money was to pay two debts Irene Holland owed Plaintiff Petro. The first debt was for $60,000, a loan that enabled Irene Holland to buy some real property, and the second debt was for $50,000, a loan that Irene Holland obtained for Scottie Holland's business.  Plaintiff Petro made these loans to Scottie Holland and Irene Holland sometime after

9

the date of the $305,000 Note.  Plaintiff Petro obtained the money for these loans from a trust that Samuel Petro created before he died.  Plaintiff Petro became the trustee of this trust after Samuel Petro's death in 1997.  Plaintiff Petro deposited the $110,000 check into the same trust account.  No one disputed these facts, although no evidence of any of the trust or its bank account was introduced into evidence.

20.     Irene Holland admitted that the payment of the $110,000 was not to be credited against the $305,000 Note but against the $50,000 and $60,000 debts.  In contrast, the $286,568.53 check would have been money owed to Rose Petro, individually, and not to a trust.

21.     Holland submitted instructions– she could not remember by phone or written-- to Security Title Corporation to void the $286,568.53 check and how to issue the four checks. Holland testified, that to her knowledge, Security Title did not require that Scottie Holland verify the information on how the checks were to be issued.

22.     Neither Irene Holland nor Scottie Holland provided a copy of the Divorce Decree, which incorporated the Agreement Incident to Divorce, to Security Title Corporation.

23.     Petro filed suit in state court against Irene Holland, Scottie Holland, and Security Title Corporation in June 2004 seeking repayment of the Note and asserting a third-party beneficiary claim to the $286,000 set forth in the Agreement Incident to Divorce.

24.     Rose Petro testified that she did not discuss finances with her children.

25.     Rose Petro loaned other money to Irene Holland after the spring of 2002, in amounts of $12,000, $12,500, $4,400, and $25,000 and possibly other amounts.

26.     Defendant Irene Holland testified that none of the other loans from her mother were ever reduced to writing.

27.     Samuel Petro loaned money to some of his other children and these loans were allegedly represented by written notes. No evidence of this practice was admitted into evidence during the trial.

28.     Plaintiff Petro testified that she handled her own finances and check book.

29.     The Court found the reasonable interpretation of the due date on the Note was that the money was due "November 1, 1993 or upon closing of the sale of the property in San Antonio (12995 I.H. 35 North, 4.23 Acres)."

30.     Plaintiff Petro failed to present evidence that Defendant Irene Holland, or both of Hollands acting together, hid the sale of the San Antonio property from Plaintiff.  Plaintiff presented no evidence of actions she took to investigate whether this property was still owned by the Hollands from after the first maturity date of November 1, 1993 on the Note through 2002 when Plaintiff testified she learned of the sale.

31.     Plaintiff Petro "thought" that the entire amount of $305,000 was still owed.  She testified she had received no payments on the Note from Irene Holland. She did not, however, offer any evidence to dispute that the sum of $286,468.53 was in fact the balance currently due and owing.  The Court finds this lower sum to be the amount in dispute.

32.     After the close of Plaintiff's portion of the trial, the Court granted the Defendant's motion for a directed verdict that all claims brought by Plaintiff Petro under 11 U.S.C. § 727 be denied because Plaintiff had introduced no evidence on any of the elements required to successfully object to a debtor's discharge.

33.     After the close of Plaintiff's portion of the trial, the Court granted the Defendant's motion for a directed verdict that Plaintiff Petro's claim brought under 11 U.S.C. § 523(a)(2)(A) related to the $305,000 Note be denied.  However, this statutory basis for non-dischargeability remained for later determination regarding the $286,568.53 debt.

34.     After the close of the Plaintiff's portion of the trial, the Court allowed the trial amendment of Plaintiff Petro's complaint to add the allegation that she holds the status of a third-party beneficiary and, as such a beneficiary, can assert dischargeability claims against Defendant Irene Holland for the $286,568.53 amount.

## Conclusions of Law

1.     Burden of Proof in a 11 U.S.C. § 523(a)(2), (4), and (6) Lawsuit

Courts have determined that the party seeking an exception to discharge bears burden of proof as to nondischargeability of the debt.  Fields v. Hartford Casualty Insurance Co., 926 F.2d 501 (5th Cir.), cert. denied, 502 U.S. 938 (1991).  Here, Plaintiff bears the burden of proof to present evidence showing the debt Defendant Irene Holland owes her should survive bankruptcy.  Also, the United States Supreme Court has stated that the plaintiff must prove the exception by a

preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287 (1991); see also, In re Mercer, 246 F.3d 391, 403 (5th Cir.2001) ("A creditor must prove its claim of nondischargeability by a preponderance of the evidence.); In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005) (same, citing Mercer).  Thus, Plaintiff must present an amount of evidence to the Court that outweighs the opponent's evidence, or such evidence that shows it is  more probable than not that the factors required for a § 523 claim are met.

A bankruptcy court is prohibited from reading general allegations to find a claim objecting to the dischargeability of a particular debt because "[c]onsistent with the Code's basic purpose of 'reliev[ing] the honest debtor from the weight of oppressive indebtedness and permit[ting] him to start afresh,' . . . exceptions to discharge are to be construed narrowly." Hickman v. State of Texas, 260 F.3d 400, 404 (5th Cir. 2001) (citations omitted).


2.    Statute of Limitations Defense

Plaintiff Petro alleges that Defendants Irene and Scottie Holland represented to Plaintiff that the sale of the San Antonio property did not occur and/or was not finalized until on or about July 30, 2002, when in fact, as Plaintiff learned later, the sale occurred in March 2000.  Because Defendants hid the sale of the San Antonio property, Plaintiff asserts she timely sued Defendants in the District Court in Bell County in June 2004.  In any event, Plaintiff asserts she is a third-party creditor beneficiary to Defendant Irene Holland's and Defendant Scottie Wayne Holland's Agreement Incident to Divorce, an agreement the Hollands signed March 27, 2003 and filed in their divorce action on March 28, 2003, slightly more than one year before she sued them.  In this written agreement, the Defendant Hollands agreed to sell the property they owned in Hawaii and pay Plaintiff $286,568.53 out of the sales proceeds.  Plaintiff argues she has standing to enforce the obligation to pay her the money stated in that Agreement Incident to Divorce and this agreement created a new debt owed her, so there is no limitations issue regarding her suit to collect at a minimum $286,568.53.

Defendant Irene Holland counters that the Note's maturity date was the first date stated in the Note, being November 1, 1993, that the Petros made no collections efforts after that date, and the claim was time barred four years later.  Additionally, Defendant argues Plaintiff 's claims are

time barred if the later maturity date set forth in the Note, being the sale of the San Antonio property, is used.  Defendant Irene Holland claims that the sale of the San Antonio property was not hidden from Plaintiff Petro, that this sale occurred March 29, 2000, but that Plaintiff did not file suit in state court against Defendant until June 2004, more than four years later.  To support this claim, Defendant asserts that Plaintiff submitted an affidavit in her state court suit specifically stating that she started making demands on the Hollands for repayment of the Note after July 30, 2001, showing that Plaintiff knew of the sale before 2002 and certainly had time to sue by March 2004 before the limitations period had run.

Texas provides a four-year statute of limitations for contract claims.  See Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a) (Vernon 2002).  "Under Texas law, '[g]enerally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy."  Dell Computer Corp. v. Rodriguez, 390 F.3d 377, 389 (5th Cir. 2004) (citing Willis v. Donnelly, 118 S.W.3d 10, 28 (Tex. App.--Houston [14 Dist.] 2003, no pet.) ("A breach of contract action is subject to a four-year statute of limitations.")).  "It is well-settled law that a breach of contract claim accrues when the contract is breached."  Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002).  "The time at which a cause of action for breach of contract accrues is a question of law.  Dell Computer Corp., 390 F.3d at 389 (5th Cir. 2004) (citing Willis, 118 S.W.3d at 28 (citing Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.1990))).

In decisions, the Texas courts have explained the purpose of a limitations period and stated such a period begins from the point of discovery of the cause of action.  As stated by the Texas Supreme Court:

> The purpose of statutes of limitations is to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses. "Society's interest in repose is to have disputes either settled or barred within a reasonable time. It is based on the theory that the uncertainty and insecurity caused by unsettled claims hinder the flow of commerce."  The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. The discovery rule, in application, proves to be a very limited exception to statutes of limitations.

Computer Associates Int'l, Inc. v. Altai, Inc.,  918 S.W.2d 453, 455 (Tex. 1996) (citations omitted).

The Texas Supreme Court limited application of the discovery rule to cases where (1) the injury is inherently undiscoverable; and (2) evidence of the injury is objectively verifiable. Id. At 456.

Independent of the discovery rule, when fraud is alleged, an equitable remedy can apply to toll the limitations period. In this type situation, Texas courts "have granted the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud." Id. (citations omitted). Additionally, Texas courts "have also permitted claimants to receive the benefit of deferring the accrual of a cause of action in cases where the facts forming the basis of an injury were concealed." Id. (citations omitted). " In short, we have said: "[F]raud vitiates whatever it touches . . . and . . . limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence." Id. at 455-56 (citations omitted). Deferral of limitations due to fraud or concealment "resembles equitable estoppel." Id. at 456. "'[F]raudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to [the] plaintiff's claim.'" Id. (quoting Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex.1983)); Bankruptcy Estate of Harrison v. Bell, 99 S.W.3d 163, 168 (Tex. App.--Corpus Christi  2002, pet. dismissed) (citing Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 736 (Tex. 2001) ("Fraudulent concealment is an equitable doctrine which estops the defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim by tolling the statute of limitations until the fraud is discovered or could have been discovered with reasonable diligence.")).

"The doctrine of fraudulent concealment is therefore limited to those situations in which the defendant has a duty of disclosure. Savage v. Psychiatric Institute of Bedford, Inc., 965 S.W.2d 745, 753 (Tex. App.--Fort Worth 1998, writ denied) (citing Patrick v. Howard, 904 S.W.2d 941, 945 (Tex. App.--Austin 1995, no writ)). "Because of this requirement, the cases where fraudulent concealment applies are rare, such as those involving doctor-patient or fiduciary relationships. The issue of whether a duty to disclose exists is a question of law for the court." Id. The "[m]ere failure to disclose a cause of action when the defendant owes no duty to disclose, however, is not fraudulent concealment." Sunwest Bank of El Paso v. Basil Smith Engineering Co., Inc., 939 S.W.2d 671, 675 (Tex. App.--El Paso 1996, writ denied) (citing

DiGrazia v. Old, 900 S.W.2d 499, 503 (Tex. App.--Texarkana 1995, no writ)).

Plaintiff alleges that Defendants Holland fraudulently concealed the sale of the San Antonio property. However, Plaintiff presented little to no evidence that either or both Defendants Holland hid the sale of the San Antonio property. She did not testify as to any acts showing their concealment of the sale, she merely testified that she relied upon Defendant Irene Holland to tell her when the property sold, that Plaintiff "thought she [Irene] would tell me when she sold it [the San Antonio property], but she never did." Transcript at 73-74. Plaintiff testified Defendant Irene Holland finally told her the property sold in late spring or early summer of 2002. Transcript at 74. She testified that, after learning of the sale, when she asked to be paid on the Note, Defendant Irene Holland "got so hostile on the phone that I had to hang up," and they never discussed it again. Transcript 74-77. Apparently, Plaintiff did nothing else to collect money owed on the Note until she filed suit two years later. Defendant Irene Holland had no duty to tell her mother of the sale of the property– she had no fiduciary duty to disclose the sale and she had no contractual duty under the terms of the Note to disclose the sale. Therefore, Plaintiff Petro did not meet her burden of proving fraudulent concealment of the sale.

Plaintiff failed to show any actions she took to investigate whether the sale of the San Antonio property had occurred after the first maturity date of November 1, 1993 through 2002. She provided no evidence of any action that would constitute "reasonable diligence" to uncover the ownership status of the property. Plaintiff testified that, in earlier years, up until 2002 when she learned about the sale of the San Antonio property, she and Defendant Irene Holland had a "wonderful relationship." Transcript at 95. In her testimony, Plaintiff did not mention any inquiries she made of Defendant Irene Holland until 2002, even though before that date, she knew Defendant Holland had a potential buyer for the property. If she had asked about the sale, she may have learned about it in time to timely sue, or, had Defendant Holland mislead her then, at least had some evidence of concealment. Given the lack of evidence of any reasonable diligence of Plaintiff to discover the sale prior to 2002, there is no grounds to apply the discovery rule exception to cause the applicable four year limitations period to begin to run at a date later than the sale of the San Antonio property on or about March 29, 2000.

As such, for the action at hand, the Court determines that Plaintiff's suit in Bell County

filed in June 2004 to collect the $305,000 due on the Note is barred by the four-year statute of limitations.

Plaintiff also contends that, because of Defendant Irene Holland's bad acts in hiding the sale of the San Antonio property for nearly a year after it occurred, Defendant should be estopped from asserting the statute of limitations ran before Plaintiff filed suit in state court in Bell County. Plaintiff also contends that the limitations period should be tolled in her favor because testimony showed that tolling should occur on account of Defendant Irene Holland's numerous, lengthy absences from Texas. Regarding the first argument, there is insufficient evidence of bad acts for estoppel to apply. For the second argument, Defendant Holland presented testimony that her stays in Hawaii were not lengthy nor permanent but for medical treatment, and during this time, she still resided in Texas. Plaintiff submitted insufficient evidence to toll limitations.

For the argument that Plaintiff is a third-party creditor beneficiary with standing to sue for the $286,568.53, the Court must determine whether the Hollands' acknowledgment of this debt owed Plaintiff in their Agreement Incident to Divorce satisfies the requirements of § 16.065 of the Texas Civil Practices and Remedies Code. This section states as follows:

> An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged.

Tex. Civ. Prac. & Rem. Code Ann. § 16.065 (Vernon 1997).

Plaintiff contends that the Agreement Incident to Divorce executed by the parties contained sufficient language to constitute an acknowledgment when it stated:

> Husband and Wife agree that the real property and all improvements located thereon commonly known as 5325 and 5325B Weke Road, Hanalei, Hawaii, shall be sold at a gross sales price of $1,600,000 and such sale will close on April 11, 2003 at Security Title Company in Lihue, Hawaii. The parties acknowledge and agree that such sale proceeds will be disbursed by the Escrow Agent in the following approximate amounts to.....: Rose Petro $286,468.53. .....One half remaining net sales proceeds to Wife. One half remaining net sales proceeds to Husband.

Whether this writing sufficiently acknowledges a debt is a question of law. See Bright & Co. v Holbein Family Mineral Trust, 995 S.W.2d 742, 745 (Tex. App. San Antonio 1999, pet. denied)

16

The Texas Supreme Court has ruled on a case factually similar to the one at hand and that court's analysis provides guidance here.  See Stine v. Stewart, 80 S.W.3d 586 (Tex. 2002).  In Stine, the husband and wife borrowed money from the wife's mother to buy a house, the parties divorced, and, in an agreement incident to divorce, the parties listed the debt owed to the mother, stated how they would repay the note owed to the mother if and when the house sold, and included a provision regarding liability and division of any remaining debt owed after a sale.[4] The mother was not a party to the agreement incident to divorce.  The mother, Stine, later sued Stewart, the ex-son-in-law, after he sold the house and did not pay the excess sales proceeds to her.  On appeal, the court of appeals found for Stewart on the basis that the agreement was not admissible under § 16.065 because "the language in the Stine agreement did not clearly and unequivocally acknowledge the debt owed to Stine and therefore, did not 'express Stewart's willingness to pay any debt.'"  Stine v. Stewart, 57 S.W.3d 94, 103 (Tex. App.--Fort Worth 2001).  The Supreme Court reversed the appellate court, determining that when the entire agreement was read and the clause was taken as a whole, it showed that Stewart agreed to pay one-half of the remaining debt, if any, after applying the net proceeds from the sale of the property.  Stine, 80 S.W.3d at 586.  The agreement incident to divorce created a new agreement with a new applicable four-year limitations period.  Id. at 591-92.  Stine was determined to be a third-party creditor beneficiary of the agreement incident to divorce with standing to sue for breach of that agreement, and she timely sued within the limitations period.  Id. at 590-93.

Here, the Hollands' Agreement Incident to Divorce does not contain the same level of detail regarding the debt they owed Plaintiff Petro that the agreement in Stine contained; however, there was no reason to include such extensive detail in the Hollands' agreement.  In Stine, the sale of the home was something that might occur on an unknown date and for an unknown amount, thus, there was a need to address how to handle any resulting shortfall.  Here, at the time the agreement was signed, the Hawaii property was under a contract for sale for a

---

[4]  The clause in the agreement stated:
"If there are any amounts owing to (Stine) the remaining balance owing to her will be appropriated 50% to NANCY KAREN STEWART and 50% to WILLIAM DEAN STEWART, JR. And said 50% from each party will be due and payable upon the determination that the proceeds from the sale of said residence are not sufficient to repay said $50,000 in full."  Stine, 80 S.W.3d at 590.

known sales price with known expenses to be deducted from the sales proceeds.  Also, both Hollands knew that there would be about $256,864 in excess proceeds to be divided between them after payment of all debts, including payment of the debt owed Plaintiff.  Defendant Irene Holland testified that the Hawaii property went under contract for sale in January 2003.  The Hawaii property closed approximately two weeks after the Hollands signed their agreement.

A reading of the Hollands' agreement clearly shows that the Hollands knew and agreed that Plaintiff was to receive the $286,568.53 from the sales proceeds, and there was no question that there were sufficient sales proceeds to pay Plaintiff.  As stated in Stine, "a third-party beneficiary does not have to show that the signatories executed the contract solely to benefit her as a non-contracting party. Rather, the focus is on whether the contracting parties intended, at least in part, to discharge an obligation owed to the third party."  Stine, 80 S.W.3d at 591 (citing MCI Telecomms. Corp. v Texas Util. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999)).  Plaintiff is a third-party creditor beneficiary of the Holland's agreement and, as such, can sue for the $286,568.53.  Her litigation actions to collect this debt began within the four-year limitations period.

The Court is not persuaded by Defendant Irene Holland's argument that Plaintiff cannot be a third-party beneficiary because the Agreement Incident to Divorce had no acknowledgment of the debt, no agreement to pay any remaining debt, no mention of liability, and no mention of what happens if the sale of the property does not close.  Although the agreement would have been more complete had more detail been included, from a practical perspective, there was no need for such detail.


3.      Factors required for a 11 U.S.C. § 523(a)(2)(A) Claim

Under 11 U.S.C. § 523(a)(2)(A), a debt shall not be dischargeable in bankruptcy "to the extent" it is "for money ... obtained by ... false pretenses, a false representation, or actual fraud." Archer v. Warner, 538 U.S. 314, 316, 123 S. Ct. 1462, 1465 (2003).  Thus, for a debt to be non-discharge able under § 523(a)(2)(A), a plaintiff must show: (1) that the defendant made a representation; (2) it was knowingly false; (3) it was made with the intent to deceive the plaintiff; (4) the plaintiff actually and justifiably relied on it; and (5) the plaintiff sustained a loss as a

proximate result of its reliance.  Id.; In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001) (same).
Thus, even if Plaintiff Petro can show Defendant Irene Holland had the requisite intent in order
to establish false pretenses and representations or actual fraud, Plaintiff must also present proof
she relied on the false statements.  See Fields v. Mans, 516 U.S. 59 (1995) (A plaintiff must
show justifiable reliance which is based upon "the qualities and characteristics of the particular
plaintiff, and the circumstances of the particular case.").

The Court ruled at trial that, because the Note was not obtained by fraud, Plaintiff had no
cause of action under § 523(a)(2)(A) related to it.  Thus, the issue is whether there is a
§ 523(a)(2)(A) claim for the $286,568.53.  Plaintiff testified at trial that she had no idea how the
$286,568.53 amount included in the Agreement Incident to Divorce was derived.  She had
received no payments from the Hollands, she had no knowledge whether her deceased husband
had received payments from the Hollands, and to the best of her knowledge, the entire $305,000
remained owed.  There was no testimony from Defendant Holland how the $286,568.53 amount
was derived.  Plaintiff testified that she had no knowledge that a debt owed to her for
$286,568.53 was included in the Hollands' Agreement Incident to Divorce and would be paid
from the Hawaii residence sales proceeds.  It is undisputed that she was never a party to any
agreement in the divorce proceedings or with Security Title Corporation.  Given these facts, there
is no evidence to support a § 523(a)(2)(A) claim arising from the $286,568.53 debt.

4.      Factors required for a 11 U.S.C. § 523(a)(4) Claim

a.      Defendant Irene Holland did not commit fraud or defalcation while acting
        in a fiduciary relationship to Plaintiff.

An action under § 523(a)(4) requires a debt to have been incurred "for fraud or
defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C.
§ 523(a)(4).  "'Defalcation is a willful neglect of duty, even if not accompanied by fraud or
embezzlement.'"  In re Felt, 255 F.3d 220, 226 (5th Cir. 2001) (quoting Moreno v. Ashworth, 892
F.2d 417, 421 (5th Cir.1990) (stating that "defalcation [while acting in a fiduciary position] is a
willful neglect of duty, even if not accompanied by fraud or embezzlement"); see also Schwager
v. Fallas, 121 F.3d 177, 184, 185 (5th Cir.1997)).  "Thus, willfulness is measured objectively by

19

reference to what a reasonable person in the debtor's position knew or reasonably should have known." Felt, 255 F.3d at 226 (citing Roy v. Gravel, 143 B.R. 825, 828 (W.D. La.1992), aff'd, 983 F.2d 1062 (5th Cir.1993)). "The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." Id. (citing Roy, 143 B.R. at 828).

Plaintiff testified that she handled her own finances and did not discuss her financial situation with her children. She testified that she did not discuss finances with her children. There is no evidence that Defendant Irene Holland occupied a fiduciary relationship to her mother. There is insufficient evidence to support an § 523(a)(4) claim.

> **b.**      **Defendant Irene Holland did not commit embezzlement of funds belonging to Plaintiff.**

"Federal law and not state law controls the meaning of "larceny" and "embezzlement" for § 523(a)(4) purposes . . .. Under § 523(a)(4), there is no requirement for the offense of larceny or embezzlement that debtor be acting in a fiduciary capacity." In re Hayden, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000) (citing 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev.1998)). The Hayden court stated, "Texas bankruptcy courts have found that embezzlement requires a showing of three elements: (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." Id. (citing In re Patton, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991); Federal Deposit Insurance Corp. v. Johnson ( In re Johnson), 108 B.R. 129, 133 (Bankr. W.D. Tex.1989)). Thus, embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Hayden, 248 B.R. at 525 n2. (citing Collier on Bankruptcy ¶ 523.10[2] (15th ed.1999), in turn, citing Black's Law Dictionary (6th ed.1990)).

Here, Plaintiff testified that it was not until about a year after she filed suit against the Hollands that she was aware: 1) the Hawaii property had sold; 2) there was a provision in the Defendant Hollands' divorce decree to pay Plaintiff money; and 3) Security Title Corporation had issued her  a check for the amount of $286,568.53, and 4) the check had been voided. She never took possession of the $286,568.53 funds.

The Texas Theft Liability Act is codified at Chapter 134 of the Texas Civil Practices and Remedies Code.  Section 134.002 defines theft as "unlawfully appropriating property... described by Section 31.03, 31.04, . . . [of the Texas] Penal Code."  Tex. Civ. Prac. & Rem. Code Ann. § 134.002 (Vernon 2005).  Section 31.03 of the Penal Code defining theft has the most relevance and provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2006).  Section 31.03(b) states in relevant part that "[a]ppropriation of property is unlawful if: (1) it is without the owner's effective consent . . .."  Tex. Penal Code Ann. § 31.03(b) (Vernon Supp. 2006).  Under the Negotiable Instruments provisions (Chapter 3) of the Texas Uniform Commercial Code, Tex. Bus.& Com. Code Ann. § 3.101 et seq., Plaintiff Petro was never the owner of the check because it was never "negotiated" to her.  Texas Business and Commerce Code § 3.201(a) provides that "'[n]egotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other that the issuer to a person who thereby becomes its holder."  Tex. Bus. & Com. Code Ann. § 3.201(a) (Vernon 2002).

Plaintiff Petro was never a "holder" of the check.  One who buys a draft from a bank drawn by it in favor of a third person is the owner thereof, entitled to return it and demand payment.  Milmo Nat'l Bank v. Cobbs, 53 Tex.Civ. App. 1, 9, 115 S.W. 345, 350 (San Antonio 1908, no writ).  A note does not become a binding obligation before delivery.  Heights Savings Ass'n v. Cordes, 412 S.W.2d 372, 374 (Tex Civ. App.--Houston 1967, no writ).  Negotiable instruments "have no vitality and therefore are not subject to execution until they leave the hands of the makers and are delivered to the payees."  Sheldon v. Stagg, 169 S.W.2d 550, 553 (Tex. App.--Amarillo 1943, writ ref'd w.o.m.).  "The general rule is that a negotiable instrument does not become binding obligation upon anyone until delivered by him to the payee with the intention of making it effective . . ..  Such delivery is requisite as between maker and payee . . .."  Vivier v. Barreda, 152 S.W.2d 774, 776 (Tex. Civ. App. -- San Antonio 1941, writ ref'd).

The undisputed facts show that Rose Petro was not a party to the real estate closing, was not a party to any of the contracts between buyer/seller/title company, and she had no lien or other property interest in the property that was sold.  Defendant Debtor and Scottie Holland had an agreement, as part of their divorce agreement, regarding the distribution of the sales proceeds

21

for the house.  Also, it is undisputed that Plaintiff Petro was not only not a party to that

agreement, she was completely unaware of it until some time after the house was sold and the

sales proceeds disbursed.  At that time, the sales proceeds were the property of the Hollands.

Until the funds are in the payee's possession, the funds remain property of the owner.  Plaintiff

was never in possession of the$286,568.53 check nor the owner of the money represented by the

check.

There is no evidence to support an § 523(a)(4) claim that Defendant Irene Holland

committed embezzlement.


c.    Defendant Irene Holland did not commit larceny regarding any funds
owned by Plaintiff.

For larceny, the Hayden court stated that:

> Other than the manner in which the funds come into possession of a party, larceny
> does not differ from embezzlement.  Larceny has been defined as "the fraudulent
> and wrongful taking and carrying away of the property of another with the intent
> to convert it to the taker's use and with intent to permanently deprive the owner of
> such property."  Collier on Bankruptcy defines larceny similarly: "Larceny is the
> fraudulent and wrongful taking and carrying away of the property of another with
> the intent to convert the property to the taker's use without the consent of the
> owner."

Hayden, 248 B.R. at 527 (citations omitted).

The Court incorporates by reference the law and testimony stated above that clearly

shows Plaintiff was never the owner nor possessor of the funds at issue.  There is insufficient

evidence to support an § 523(a)(4) claim for larceny.


5.    Defendant did not commit willful and malicious injury to Plaintiff or Plaintiff's
property.

An action under § 523(a)(6) requires a debt to have been incurred "for willful and

malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C.

§ 523(a)(6).  Case law has defined the operative terms in this section, and, through those

definitions, has narrowed the type of intentional tort that can support nondischargeability under

this section.  Section 523(a)(6) does not exempt from discharge those debts resulting from intentional acts that cause <u>unintended or unanticipated injuries</u>; instead, it only exempts debts arising from acts by a debtor that cause <u>intentional or substantially certain injury</u>.

The Fifth Circuit has incorporated the guidelines set forth in <u>Kawaauhau v. Geiger</u> for determining whether a debt arises from a willful and malicious injury and, therefore, is excepted from discharge under § 523(a)(6).  <u>See</u> <u>In re Williams</u>, 337 F.3d 504, 508 (5th Cir. 2003) (citing <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 59, 118 S. Ct. 974, 975-76 (1998) (holding that § 523(a)(6) does not except from discharge debts arising from negligently or recklessly inflicted injuries)). The Supreme Court stated that "willful," as used in the code provision, "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  <u>Id.</u> (quoting <u>Geiger</u>, 523 U.S. at 61, 118 S. Ct. at 977.  Additionally, the Fifth Circuit has held that for a debt to be nondischargeable, a debtor must have acted with "objective substantial certainty or subjective motive" to inflict injury, a perspective that further narrows the category of tortious conduct that can support a § 523(a)(6) claim.  <u>Williams</u>, 337 F.3d at 509 (citing <u>Miller v. J.D. Abrams, Inc. ( In re Miller )</u>, 156 F.3d 598, 603, 604 (5th Cir.1998) ("Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful.")).  In defining "malicious," the <u>Miller</u> court concluded that § 523(a)(6) creates an "implied malice standard," such that a debtor acts with implied malice when he acts "with the actual intent to cause injury." <u>Williams</u>, 337 F.3d at 509 (quoting <u>Miller</u>, 156 F.3d at 605-06 (citation omitted)). This definition of implied malice is identical to the <u>Kawaauhau</u> Court's explanation of a willful injury in that both require actual intent to cause harm.  <u>Id.</u>  "The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor."  <u>Id.</u>

The Fifth Circuit has recognized that a breach of contract may involve an intentional or substantially certain injury giving rise to a § 523(a)(6) claim.  <u>Id.</u> at 510 (citing <u>Texas v. Walker</u>, 142 F.3d 813, 823 (5th Cir.1998); <u>Miller</u>, 156 F.3d at 606)).  In order to determine whether this has occurred, a court must look at the knowledge and intent of the debtor at the time of the breach and the debtor's real motive at the time of the breach: whether there were other reasons

23

for the breach or the breach was done only to injure the creditor, i.e., the breach was intentional or substantially certain to cause the injury to the creditor. Id. at 511.

Here, Defendant Holland testified she voided the check to Plaintiff in order to have money pay the debt owed on certain heavy equipment so she would not to lose her investment in said equipment. She testified she received oral permission from Plaintiff to do so; at this point in the trial, Defendant was testifying on direct examination by Plaintiff's attorney. Plaintiff did not present any rebuttal testimony on this issue. Clearly, Defendant Irene Holland breached her contract with Scottie Holland, as set forth in the Agreement Incident to Divorce, to pay $286,568.53 to Plaintiff; however, the Hollands have settled all issues between them. Defendant Irene Holland breached that same agreement with Plaintiff as a third-party creditor beneficiary to pay her the $286,568.53 stated therein. However, uncontested evidence shows that Defendant Irene Holland's motive in breaching the agreement was not to intentionally injury Plaintiff but to save equipment awarded to Defendant in the divorce that had been awarded along with its debt. Defendant Irene Holland's act of breaching the terms of the Agreement Incident to Divorce applicable to Plaintiff is an example of an intentional act resulting in unintended or unanticipated injury. There is no evidence showing that Defendant Irene Holland breached this term of the Agreement Incident to Divorce to cause an intentional or substantially certain injury to Plaintiff.

Thus, Plaintiff has provided insufficient evidence to support an § 523(a)(6) claim for willful and malicious injury to Plaintiff or Plaintiff's property.

6.      Plaintiff Petro has not met her burden of proving any of the factors required by 11 U.S.C. §§ 523(a)(2)(A),(4) or (6) such that the debt Defendant Irene Holland owes her should be excepted from discharge.

7.      Plaintiff Petro's attorneys have submitted post-trial affidavits for attorney's fees and expenses in excess of $120,000 pursuant to their agreements with Plaintiff to pursue this pre-petition debt owed to her. Thus, any fees and expenses which would be awarded would be considered pre-petition claims and would be added to the pre-petition, unsecured debt owed to her.

Carl David Adams seeks "reasonable and necessary attorneys fees incurred by Rose Petro in pursuing the original Petition in the State Court, for which attorneys' fees are provided under

Section 134.005(b) of the Texas Theft Liability Act."[5]   See Supplement to Written Arguments and Authorities of Rose Petro Re: Adversary Complaint to Except Debt from Discharge filed in Adversary Proceeding No. 06-6002 on September 1, 2006 (Doc. #22).   However, despite this statement, in the affidavit attached to the Supplement, he does not segregate the fees incurred in pursuing the state court suit from the fees incurred in pursuing the adversary proceedings, and he states that his services covers the period of (approximately) May 1, 2004 through August 28, 2006, [which is the time period from about a month prior to the filing of the state court suit through a month after the trial in this Court] of a total of 363.4 hours.  Mr. Adams does attempt to segregate the fees incurred by Plaintiff Petro in pursuing Security Title Corporation (114.5 hours or $31,487.50) versus the fees she incurred in pursuing both Defendants Scottie and Irene Holland (248.9 hours or $68,897.50).  Mr. Adams seeks reimbursement of expenses of $2609.17, none of which is segregated by state versus bankruptcy court or by defendant.

Other than state he is an attorney of record for Plaintiff, Jay L. Gueck does not provide any authority under which he is seeking attorney's fees and expenses.  In his affidavit attached to the Supplement, he states his time was incurred in prosecuting Plaintiff's claims against Defendant Irene Holland in the bankruptcy court in the amount of $22,303 [71.3 hours at $300/hour for him ($21,390), 0.10 hours for another attorney at the same law firm at $250/hour ($25), and 10.09 hours at $75/hour for a paralegal ($756.75)].[6]  He seeks $878.07 in expenses.

A review of the conduct of this bench trial shows that an award of such a large amount of fees is not warranted.  Only two witnesses were called to testify, being Plaintiff Petro and Defendant Irene Holland.  Very few exhibits were admitted.  Many facts  were "argued" but not proven.  Counsel for Plaintiff advised the Court that they had traveled to Hawaii for a deposition, yet no deposition was used at the trial.  In Adversary Proceeding No. 06-6002, Plaintiff asserted a number of grounds for denying Defendant Irene Holland a discharge.  Immediately prior to

---

[5]  This provision for an award of court costs and reasonable and necessary attorney's fees for a person who has sustained damages resulting from theft is found in the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code  Ann. § 134.005(b) (Vernon 2005).  "Section 134.005(b) of the Act provides that a prevailing plaintiff may recover "reasonable and necessary attorney's fees." Beaumont v. Basham, 205 S.W.3d 608, 621 (Tex. App.--Waco, 2006, pet. for review filed Nov. 10, 2006).

[6]  These amounts total $22,171.75, not $22,303.00 as requested.

opening statements, as part of other relief sought, counsel for Defendant Irene Holland moved to strike Plaintiff's § 727 claims because Plaintiff had not complied with the applicable requirements for timely filing and serving on Defendant a Pre-trial Order and exhibits, as required by the scheduling orders entered in the adversary proceedings and the Local Bankruptcy Rules for the Western District of Texas.  Plaintiff's counsel argued that Plaintiff should be entitled to introduce evidence on her 11 U.S.C. § 727 grounds.  Despite a ruling in Plaintiff's favor, incredibly, after all of this argument, counsel for Rose Petro finished the presentation of her case and rested without introducing one single fact to support any claim under any subsection of  § 727.  Upon reassertion of her motion, Defendant received a favorable ruling on her motion for instructed verdict denying all of Plaintiff's § 727 claims.  Plaintiff's attorneys were to submit appropriate pleadings sufficient to memorialize and implement Plaintiff's settlement with Defendant Scottie Holland, and they have not done so.  The Court has previously noted this lapse in another court order issued in the fall of 2006.   Throughout the trial, the Court did not see representation which would justify an award of $120,000 or more in attorney's fees and expenses.

8.      The settlement of issues included in Adversary Proceeding Nos. 06-6001 and 06-6002 between Plaintiff Petro and Defendant Scottie Holland is reasonable and approved.  Any other relief requested and not specifically granted is denied.

9.      The Court declines to award attorney's fees and costs to Defendant Irene Holland because such an award is only authorized under § 523(d) if the Court finds that the position of the creditor in bringing the dischargeability complaint under § 523(a)(2) was not substantially justified.  The testimony presented at trial did not show the position of Plaintiff Petro to have not been substantially justified.

Defendant Irene Holland has shown a complete lack of responsibility with respect to her written agreement to repay Rose Petro (and now deceased father), a loan originally in the sum of $305,000.  She introduced no evidence to show any effort was ever made to repay this loan prior to its original maturity date of November 1, 1993.  Considering the alternate maturity date of the Note, testimony showed that Rose Petro did not know of the sale of the San Antonio property until about two years after it occurred.  Despite Defendant Irene Holland's position that her

mother "learned" of the sale, it is obvious that Defendant Irene Holland did not take any specific action to insure that her mother was informed of the sale and certainly took no action then to honor her duty to pay, or try to pay, the Note.  Defendant Irene Holland next entered into an agreement with her husband, Scottie Holland, to disburse proceeds from the sale of their residence in Hawaii to settle the debt with her mother.  Defendant Scottie Holland was co-liable on that obligation and was co-owner of the proceeds from the sale in Hawaii.  Notwithstanding this second, separate agreement, and its approval by the divorce court, and her receipt of the funds to pay Rose Petro, Defendant Irene Holland managed to not pay her mother yet one more time.  For these reasons, the Court finds, for purposes of 11 U.S.C. § 523(d), Plaintiff Rose Petro's position in pursuing this litigation was substantially justified and further finds that it would be unjust to award any attorney's fees to Defendant Irene Holland for defending herself in this litigation.

A Judgment consistent with this Memorandum Opinion will be entered of even date herewith in each Adversary Proceeding.

IT IS SO ORDERED.

# # #